**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC., a California corporation | |
| Plaintiff, | |
| v. | Case No. |
| GIANLUCA CUSATIS, an individual, and CUSATIS COMPUTATIONAL SERVICES, INC., an Illinois corporation, | DEMAND FOR JURY TRIAL |
| Defendant. | |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, TRADE SECRET
MISAPPROPRIATION, AND BREACH OF CONTRACT**

Plaintiff, ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC. ("Plaintiff")

for its Complaint against defendants GIANLUCA CUSATIS, an individual, and CUSATIS

COMPUTATIONAL SERVICES, INC., an Illinois corporation (collectively, the "Defendants"),

alleges:

**PARTIES**

1.      Plaintiff, Engineering and Software System Solutions, Inc. is a corporation organized

and existing under the laws of the State of California, with a principal place of business in San

Diego, California.

2.      Defendant Gianluca Cusatis ("Defendant Cusatis") is, and was at all times mentioned

herein, domiciled in and a resident of the village of Wilmette in Cook County, Illinois.

3.      On information and belief, Defendant Cusatis Computational Services, Inc.

("Defendant CCS") is a corporation organized and existing under the laws of the State of Illinois,

with a principal place of business in Wilmette, Illinois.

4.      Plaintiff is informed and believes and thereon alleges that at all times herein

mentioned, and in doing the things herein mentioned, each of the Defendants herein was the agent, and employee of, and acted for and on behalf of, each of its co-defendants herein within the scope of his or its authority and agency, real and apparent, and pursuant to an agreement between and among themselves.

## JURISDICTION AND VENUE

5.      This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101, et seq. and related claims of trade secret misappropriation and breach of contract. This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a) and 1338(b), and this Court's pendent jurisdiction. In addition, this action is of a civil nature involving, exclusive of interest and costs, a sum in excess of $75,000.00. Every issue of law and fact is wholly between citizens of different states. Thus, this Court also has jurisdiction of this action under 28 U.S.C. § 1332.

6.      Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants reside in the State of Illinois or are domiciled within this judicial district. This Court has personal jurisdiction over Cusatis as he is a resident within the Northern District of Illinois. Venue is also proper as to CCS because it is incorporated and existing under the laws of the State of Illinois and also has a principal place of business within the state.

## GENERAL ALLEGATIONS

7.      Plaintiff conceived and developed a special purpose computational software for simulating the mechanical response of structures under various loading conditions (collectively, the "MARS Software"). The MARS Software consists of source code that was written and improved over the course of 22 years. Plaintiff's MARS source code includes pre- and post-processor capabilities (where the pre-processor takes the user's input of geometry and creates a model that enables the numerical simulation to be performed and the post-processor takes the output from the

numerical simulation and enables the visualization of the results). The MARS Software source code has significant value to Plaintiff and others because it facilitates the solution of problems involving structural break-ups, fragmentation, and post-failure response under extreme loading conditions. Plaintiff uses the MARS Software in interstate commerce, including (and not limited to) performing research and development under contracts awarded by the U.S. Army Engineer Research and Development Center (ERDC), the premier research and development center for the U.S. Army Corps of Engineers. Plaintiff is the exclusive owner of the copyright in and to the MARS Software source code and obtained a copyright registration from the United States Copyright Office for the MARS Software, under Registration No. TXu 2-322-892, as shown in **Exhibit A**.

8.      The MARS Software includes secret information which derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information, including without limitation the pre- and post-processor capabilities (the "Trade Secrets"). The Trade Secrets in MARS consists of a large set of unique models, methods, algorithms, procedures, etc.(features) which perform a variety of functions and capabilities. The details of these features have not been published.[1]  Plaintiff has taken reasonable measures to keep

---

[1] Some of these features include:
1.      analytical formulations for modeling beam and shell finite element, discrete macro-particles, interaction models between different components, special contact conditions, special constraints, unique way of defining rigid bodies.
2.      advanced built-in pre- and post-processors for generating models and post-processing simulation results in formats that can be used by graphical packages, like Paraview, to make three-dimensional renderings.
3.      unique numerical approaches for neighborhood searches used in contact detection algorithms, constraint, etc.
4.      numerical algorithms and procedures that implement Message Passing Interface (MPI) parallelization. MPI parallelization makes it possible to simulate very large problems on massively parallel supercomputer centers, like the High Performance Computing (HPC) centers managed by DoD.
5.      modular implementation of a Graphical User Interface (GUI)
6.      a unique procedure to automatically determine the best model parameters using experimental data.
7.      implementation of a GCode interface for generating analytical models of components to be simulated. The GCode simulator in MARS makes it possible to generate components using the commands which are also used to create the actual part.
The list above includes a large number of features in MARS but does not include all the features.

the Trade Secrets confidential, including without limitation (1) the use of agreements that control the dissemination of Trade Secrets by containing non-disclosure provisions or restrictive covenants which were signed by Defendant Cusatis and other employees and individuals who were given access to the Trade Secrets, (2) limiting access to the Trade Secrets to only those employees and individuals who directly worked on developing the Trade Secrets, (3) encrypting data and/or using password protections to further control access to places where the Trade Secrets were and are kept, and (4) not including the portions of the source code containing the Trade Secrets in the material deposited with the United States Copyright Office. The Trade Secret relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce. The making of internal markings on software utilized by the company as was done in this case, including reference to its copyright, created a reservation of rights and designation as a company trade secret.

9. From 2003-2019, Defendant Cusatis used the MARS Software (initially as a university researcher and later an ES3 employee) to work on mathematical models and computer simulations. During this time, Defendant Cusatis learned about the great capabilities and the commercial applications of the MARS Software, while gaining the trust and confidence of Plaintiff's key officers, including Daniele Pelessone, Plaintiff's Chief Scientist.

10. On or about August 14, 2017, Plaintiff hired Defendant Cusatis as an employee to assist Plaintiff on a certain contract with ERDC which included the use of the MARS Software. As part of his employment, Defendant Cusatis signed a *Confidentiality and Non-competition Agreement* (hereinafter, the "Agreement") acknowledging and agreeing that he would not disclose Plaintiff's "Confidential Information" (as defined in the Agreement), which includes the Trade Secrets, or use any of such information except pursuant to his employment and for the benefit of Plaintiff. A copy of the Agreement is attached as **Exhibit B** and incorporated herein by reference

11.     On or around June 9, 2018, Defendant Cusatis requested Plaintiff exclusively license and transfer ownership of the MARS Software to him to allow him to independently modify, promote, offer for sale and sell the MARS Software. Plaintiff promptly denied Defendant Cusatis' request and advised him that Plaintiff would remain the owner and developer of the MARS Software.

12.     On June 23, 2018, Defendant Cusatis requested Plaintiff provide him with a copy of the MARS Software source code ostensibly to assist Defendant Cusatis in performing his duties as an employee of Plaintiff. As a long-time, trusted collaborator and then current staff member subject to a Confidentiality Agreement, Plaintiff provided Defendant Cusatis with the MARS Software source code under the conditions stated herein and subject to all trade secret protections and relevant contracts.

13.     On or about July 5, 2019, Defendant Cusatis' employment with Plaintiff was mutually terminated because a certain contract with ERDC had ended.

14.     On November 1, 2019, Plaintiff received an email from Defendant Cusatis advising Plaintiff that he had removed the MARS Software source code from his computer.

15.     On information and belief and a reasonable opportunity for discovery will show that beginning sometime in or around 2019, Defendant Cusatis was developing a software program that was like the MARS Software (hereinafter, the "MARS Derivative").

16.     On information and belief and a reasonable opportunity for discovery Defendant Cusatis improperly copied and inserted and or utilized portions of the MARS Software source code, including without limitation the Trade Secrets, into the MARS Derivative. The MARS Software source code and the Trade Secrets took years to develop. On information and belief and a reasonable opportunity for discovery, given the length of time it requires to independently develop the MARS Software source code and the Trade Secrets, Plaintiff alleges that that Defendant Cusatis improperly

copied the MARS Software source code and/or copied or used the Trade Secrets to create the MARS Derivative.

17.     In addition to the foregoing, and based on articles that have been published for the American Society of Civil Engineers ("ASCE"), it is clear that Defendants have submitted for publication and used material that is clearly Plaintiff's proprietary and trade secret material without authorization and consent.   Defendant Cusatis admits that the material published for ASCE was created while working at ES3 under contract from ERDC.  Moreover, Defendants knew full well that the work created at ES3 under contract from ERDC enabled ES3 to retain all rights in the data developed under the ERDC funding and that the work was confidential and propriety to  ES3.

18.     On information and belief and a reasonable opportunity for discovery, within the past 3 years, Defendant Cusatis used the MARS Derivative and/or the MARS source code to create a progress report for the ERDC in connection with Plaintiff's contract.  The report contained a figure depicting a compression simulation with high-strength aggregate and low-strength binder which was labeled "Figure 10". On information and belief and a reasonable opportunity for discovery the MARS Derivative generated Figure 10 by using portions of the MARS Software source code and the Trade Secrets that Defendant Cusatis copied and misappropriated from Plaintiff. During a conference call with the ERDC, Daniele Pelessone, Plaintiff's Chief Scientist officer, repeatedly asked Defendant Cusatis to explain how he created Figure10. Initially, Defendant Cusatis was evasive and avoided answering the question but later during the conference he admitted that he used software which he claimed he created and which Plaintiff claims is a MARS Derivative or that he in fact used the MARS source code.  Defendants have no right to use or continue using the MARS Derivative, the MARS Software and/or the Trade Secrets.

19.     Plaintiff has repeatedly requested that Defendant Cusatis confirm if he copied and inserted portions of the MARS Software source code, including without limitation the Trade Secrets,

into the MARS Derivative and, if he did not do so, to explain how he otherwise developed the MARS Derivative. Plaintiff has also requested that Defendant Cusatis explain how Figure 10 in the progress report was created if not with use of MARS or a MARS derivative. Defendant Cusatis has refused to answer Plaintiff's direct inquiries or has been evasive in his answers, which further leads Plaintiff to believe that Defendant Cusatis copied and inserted portions of the MARS Software source code, including without limitation the Trade Secrets, into the MARS Derivative which Defendants have used and continue to use and falsely claim as their own.

20.     On July 14, 2022, Plaintiff's counsel sent a cease-and-desist letter to Defendant Cusatis objecting to Defendant's unauthorized use, reproduction, and distribution of the MARS Derivative, the MARS Software and/or the Trade Secrets. Attached hereto as **Exhibit C** is a true and correct copy of Plaintiff's counsel's July 14, 2022 cease-and-desist letter to Defendant Cusatis.

21.     Follow up correspondence has been exchanged, but to date, Plaintiff has not received a substantive response to the specific issued raised in its cease-and-desist letter and, after reasonable inquiry, believe that Defendant has not complied with the demands set out therewith and is being evasive in what information has been provided.

22.     In addition to the creation of the MARS Derivative, Defendants have published at least two articles with the ASCE that contain confidential and propriety information belong to Plaintiff without authorization and consent. The information, data and technology used to draft those published works was provided to Defendant Cusatis when employed by Plaintiff and subject to the Confidentiality Agreement. The publications utilizes and in part discloses the confidential information, data and technology belonging to the Plaintiff. Plaintiff has specifically and unequivocally retained its rights in said information, data and technology in connection with government contract work and in the Confidentiality Agreement. In addition to the foregoing, there are specific protocols to be followed if anyone other than Plaintiff claims rights in the work and/or

seeks to publish the same. Neither Defendants nor any third party has followed said protocols, sought permission to publish the information, data or technology or claimed any interest in the information, data and technology demonstrating a clear recognition and admission that the information, data and technology is the sole and exclusive property of the Plaintiff.

## FIRST COUNT
**(Copyright Infringement)**

23.     Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 22 of this Complaint, and incorporates such paragraphs as though fully set forth at length herein.

24.     The MARS Software source code is an original work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101 et. seq. Plaintiff is the exclusive owner of rights under copyright in and to the MARS Software source code under Registration No. TXu 2-322-892 as shown in **Exhibit A**.

25.     Plaintiff is informed and believes, and on that basis alleges, Defendant Cusatis copied, modified, and inserted portions of the MARS Software source code, including the pre- and post-processor capabilities, into the MARS Derivative, which Defendants have used and continue to use and falsely claim as their own. Defendants are wrongfully using the MARS Software source code without Plaintiff's permission and over its objections.

26.     On information and belief, Defendant Cusatis' identical copying and exploitation of the MARS Software source code was willful, and in disregard of, and with indifference to, the rights of Plaintiff. On further information and belief, Defendant's intentional, infringing conduct was undertaken to reap the financial benefit and value associated with the MARS Software source code. By failing to obtain Plaintiff's authorization to use the MARS Software source code or to compensate Plaintiff for the use, Defendant has avoided payment of license fees and other financial

costs associated with obtaining permission to exploit the MARS Software source code, as well as the restrictions that Plaintiff is entitled to and would place on any such exploitation as conditions for Plaintiff's permission, including the right to deny permission altogether.

27.     Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants intend to continue their course of conduct to wrongfully use, copy, and modify Plaintiff's MARS Software and thereby infringe upon Plaintiff's copyrights. As a direct and proximate result of the acts of Defendants alleged above, Plaintiff has already suffered harm and damage. Plaintiff has no adequate remedy at law to address all of the injuries that Defendants have caused and intends to cause by his conduct. Plaintiff will continue to suffer irreparable damage and sustain lost profits unless Defendants' actions alleged above are enjoined by this Court.

28.     By its actions alleged above, Defendants have infringed and will continue to infringe Plaintiff's copyrights in and relating to the MARS Software source code.

29.     Plaintiff is entitled to an injunction restraining Defendants, its officers, agents and employees, and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

30.     Plaintiff is further entitled to recover from Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of his acts of infringement alleged above. At the present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Plaintiff but exceed $500,000.00.

WHEREFORE, Plaintiff, ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC., respectfully requests that a judgment be entered against Defendants, GIANLUCA CUSATIS and CUSATIS COMPUTATIONAL SERVICES, INC., for the following:

(i)      awarding damages in an amount according to proof at trial or statutory damages, as permitted under the Copyright Act (17 U.S.C. section 504), for each and every act of infringement, including willful infringement, including reasonable attorney's fees and costs;

(ii)     enjoining Defendants, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, from directly or indirectly infringing Plaintiff's copyrights in the MARS Software source code, or continue to market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the MARS Software source code, or to participate or assist in any such activity;

(iii)    enjoining Defendants, their directors and officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, to return to Plaintiff any and all originals, copies, facsimiles or duplicates of any portion of the MARS Software source code, in their possession, custody or control;

(iv)    ordering Defendants, their directors and officers, agents, servants, employees, and all persons in active concert or privity or in participation with them, to recall from all firms, vendors, sub-agents and distributors, and all others known to Defendants, and each of them, any originals, copies, facsimiles or duplicates of any works shown by the evidence to infringe any copyright in the MARS Software source code;

(v)     enjoining Defendants, and each of them, to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies, facsimiles or duplicates of any work shown by the evidence to infringe any copyright in the MARS Software source code;

(vi)    awarding damages Plaintiff and against Defendants, and each of them, based upon their acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*;

(vii)   ordering Defendants, and each of them, to account to Plaintiff for all profits realized by them and all damages sustained by Plaintiff by reason of the unfair competition and unjust enrichment complained of, which profits and damages are believed to exceed the sum of $75,000;

(viii)  directing that all gains, profits and advantages derived by realized by Defendants, and each of them, from their acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of Plaintiff;

## SECOND COUNT
### (Violation of Defend Trade Secrets Act, 18 U.S.C. § 1836)

31.     Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 30 of this Complaint, and incorporates such paragraphs as though fully set forth at length herein.

32.     During its relationship with Defendant Cusatis, Plaintiff provided Defendant Cusatis with access to Plaintiff's Trade Secrets (as described above), which derive economic value from not being generally known or readily ascertainable.

33.     Because the Trade Secrets give Plaintiff a competitive business advantage, Plaintiff protects the information from disclosure as described above. In the Agreement, Defendant Cusatis agreed to protect the confidentiality of that information and to use it solely for the benefit of Plaintiff while Plaintiff employed him. At all relevant times, Defendant Cusatis had a duty to maintain the secrecy of the Trade Secrets and limit the use of the Trade Secrets, as described above.

34.     On information and belief, Defendant Cusatis improperly used the Trade Secrets, which are related to products and services used in or intended for use in interstate or foreign commerce, to create the MARS Derivative to improperly and unfairly compete with Plaintiff and to publish information in articles published by ASCE that rely upon and utilize confidential trade secret information belonging to the Plaintiff. The unauthorized use of the Trade Secrets to benefit Defendant Cusatis and, directly or indirectly, Defendant CCS, will provide an unfair competitive advantage to Defendants and cause harm to Plaintiff. Defendant Cusatis' conduct with respect to the Trade Secrets puts Plaintiff at imminent risk of irreparable harm with respect to the disclosure or use of the Trade Secrets.

35.     Absent entry of a temporary restraining order and injunction, Plaintiff will suffer irreparable harm from the disclosure or use of its trade secret and confidential information.

36. Plaintiff is further entitled to recover from Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their misappropriation of the Trade Secrets. At the present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Plaintiff but likely exceed $500,000.00.

WHEREFORE, Plaintiff, ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC., respectfully requests that a judgment be entered against Defendants, GIANLUCA CUSATIS and CUSATIS COMPUTATIONAL SERVICES, INC., for the following:

(i) enjoining Defendants, their agents, and servants from disclosing or using Plaintiff's trade secrets in any manner;

(ii) ordering Defendants to account to Plaintiff for any and all profits derived by Defendant from the sale or license of the MARS Derivative or dollars collected for services rendered using the MARS Derivative work and for all damages sustained by Plaintiff by reason of the acts of misappropriation complained of; and

(iii) awarding reasonable attorney's fees and costs.

### THIRD COUNT
**(Violation of Illinois Trade Secret Act, 765 Ill. Comp. Stat. § 1065 et seq.)**

37. Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 36 of this Complaint, and incorporates such paragraphs as though fully set forth at length herein.

38. During its relationship with Defendant Cusatis, Plaintiff provided Defendant Cusatis with access to Plaintiff's Trade Secrets (as described above), which derive economic value from not being generally known or readily ascertainable.

39. Because the Trade Secrets give Plaintiff a competitive business advantage, Plaintiff protects the information from disclosure as described above. In the Agreement, Defendant Cusatis agreed to protect the confidentiality of that information and to use it solely for the benefit of Plaintiff

while Plaintiff employed him. At all relevant times, Defendant Cusatis had a duty to maintain the secrecy of the Trade Secrets and limit the use of the Trade Secrets, as described above.

40.     On information and belief, Defendant Cusatis improperly used the Trade Secrets to create the MARS Derivative and to publish articles with the ASCE to improperly and unfairly compete with Plaintiff. The unauthorized use of the Trade Secrets to benefit Defendant Cusatis and, directly or indirectly, Defendant CCS, will provide an unfair competitive advantage to Defendants and cause harm to Plaintiff.  Defendant Cusatis' conduct with respect to the Trade Secrets puts Plaintiff at imminent risk of irreparable harm with respect to the disclosure or use of the Trade Secrets.

41.     The aforementioned acts of Defendants were willful, malicious, and fraudulent. Plaintiff is therefore entitled to exemplary damages under 765 Ill. Comp. Stat. § 1065/4(b).

42.     Absent entry of a temporary restraining order and injunction, Plaintiff will suffer irreparable harm from the disclosure or use of its trade secret and confidential information.

43.     Plaintiff is further entitled to recover from Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their misappropriation of the Trade Secrets. At the present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Plaintiff but likely exceed $500,000.00.

WHEREFORE, Plaintiff, ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC., respectfully requests that a judgment be entered against Defendants, GIANLUCA CUSATIS and CUSATIS COMPUTATIONAL SERVICES, INC., for the following:

(i)     enjoining Defendants, their agents, and servants from disclosing or using Plaintiff's trade secrets in any manner;

(ii)    ordering Defendants to account to Plaintiff for any and all profits derived by Defendant from the sale or license of the MARS Derivative and for all damages sustained by Plaintiff by reason of the acts of

misappropriation complained of;

(iii)     awarding reasonable attorney's fees and costs.

## FOURTH COUNT
**(Violation of California Uniform Trade Secret Act, Cal. Civ. Code § 3426 et seq.)**

44.     Plaintiff realleges and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 43 of this Complaint, and incorporates such paragraphs as though fully set forth at length herein.

45.     During its relationship with Defendant Cusatis, Plaintiff provided Defendant Cusatis with access to Plaintiff's Trade Secrets (as described above), which derive economic value from not being generally known or readily ascertainable.

46.     Because the Trade Secrets give Plaintiff a competitive business advantage, Plaintiff protects the information from disclosure as described above. In the Agreement, Defendant Cusatis agreed to protect the confidentiality of that information and to use it solely for the benefit of Plaintiff while Plaintiff employed him. At all relevant times, Defendant Cusatis had a duty to maintain the secrecy of the Trade Secrets and limit the use of the Trade Secrets, as described above.

47.     On information and belief, Defendant Cusatis improperly used the Trade Secrets to create the MARS Derivative and to publish articles with the ASCE to improperly and unfairly compete with Plaintiff. The unauthorized use of the Trade Secrets to benefit Defendant Cusatis and, directly or indirectly, Defendant CCS, will provide an unfair competitive advantage to Defendants and cause harm to Plaintiff.  Defendant Cusatis' conduct with respect to the Trade Secrets puts Plaintiff at imminent risk of irreparable harm with respect to the disclosure or use of the Trade Secrets.

48.     The aforementioned acts of Defendants were willful, malicious, and fraudulent. Plaintiff is therefore entitled to exemplary damages under California Civil Code § 3426.3(c).

49.     Defendants' conduct constitutes transgressions of a continuing nature for which Plaintiff has no adequate remedy at law.  Unless and until enjoined and restrained by order of this Court, Defendants will continue to retain and use Plaintiff's Trade Secrets to enrich themselves and divert business from Plaintiff.  Pursuant to California Civil Code § 3426.2, Plaintiff is entitled to an injunction against the misappropriation and continued threatened misappropriation of trade secrets as alleged herein and further asks the Court to restrain Defendants from using all trade secret and confidential information misappropriated from Plaintiff and to return all trade secret information to Plaintiff.

50.     Plaintiff is further entitled to recover from Defendants the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of their misappropriation of the Trade Secrets. At the present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Plaintiff but likely exceed $500,000.00.

WHEREFORE, Plaintiff, ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC., respectfully requests that a judgment be entered against Defendants, GIANLUCA CUSATIS and CUSATIS COMPUTATIONAL SERVICES, INC., for the following:

(i)     enjoining Defendants, their agents, and servants be enjoined from disclosing or using Plaintiff's trade secrets in any manner;

(ii)    ordering Defendants to account to Plaintiff for any and all profits derived by Defendant from the sale or license of the MARS Derivative and for all damages sustained by Plaintiff by reason of the acts of misappropriation complained of; and

(iii)   awarding reasonable attorney's fees and costs.

### FIFTH COUNT
**(Breach of Contract)**

51.     Plaintiff realleges and incorporates herein by this reference each and every allegation

contained in paragraphs 1 through 50 of this Complaint, and incorporates such paragraphs as though fully set forth at length herein.

52.     Plaintiff hired Defendant Cusatis to assist with the advancement of the MARS Software and to perform services under contract with the federal government. As a condition of his hiring, Plaintiff required, and Defendant Cusatis acknowledged and agreed not to disclose any of Plaintiff's confidential information or use such information other than pursuant to his employment and for the benefit of Plaintiff. Defendant Cusatis' obligation not to disclose or use Plaintiff's confidential information continued after his relationship with Plaintiff terminated.

53.     On information and belief, Defendant breached the Agreement by among other things:

(1), using Plaintiff's confidential information to improperly develop the MARS Derivative to compete directly with Plaintiff's MARS Software;

(2) using proprietary confidential information and ES3 trade secrets to publish at least two works with ASCE that rely upon and partially disclose and utilize the confidential information and/or trade secrets of ES3 without the necessary consent of ES3 and/or without designating the data or information as belonging to others and designating the rights and authorship as his own to further his own financial interest; and

(3) have or are in the process of using the confidential information for commercial gain.

54.     As a result of Defendant's breach of the contract, Plaintiff has suffered and will continue to suffer economic harm by Defendants use of the MARS Derivative and because the publication of the articles with the ASCE has placed certain confidential information in the public domain and has also called into question the fact that ES3 is the sole owner and exclusive entity that has the capability to perform the services utilizing the confidential trade secrets and data owned by ES3.   Plaintiff is further entitled to recover from Defendant Cusatis the damages, including attorneys' fees, it has sustained and will sustain, by Defendant Cusatis' breach of the Agreement. At

the present, the amount of such damages cannot be fully ascertained by Plaintiff but exceed $500,000.00.

WHEREFORE, Plaintiff, ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC., respectfully requests that a judgment be entered against Defendants, GIANLUCA CUSATIS and CUSATIS COMPUTATIONAL SERVICES, INC., for the following:

(i)     awarding compensatory damages in an amount Plaintiff believes will materially exceed $500,000; and

(ii)    for such other relief that the Court deems just and proper.

### ***TRIAL BY JURY DEMANDED***

Dated:  February 3, 2023

Respectfully submitted,

ENGINEERING AND SOFTWARE SYSTEM SOLUTIONS, INC.

By:  */s/ Victor J. Pioli*
    By: One of Its Attorneys

Joseph R. Marconi, ARDC #1760173
Victor J. Pioli, ARDC #6256527
JOHNSON & BELL, LTD.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
312.372.0770 (T)
marconij@jbltd.com
pioliv@jbltd.com

James M. Peterson
Phillip C. Samouris
401 West A Street
Suite 2600
San Diego, CA  92101
(619) 236-1551
peterson@higgslaw.com
samouris@higgslaw.com

*Attorneys for Plaintiff*